IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**ANGELA CHERRY TAYLOR,**

        **Plaintiff,**

v.                                                                          Case No. 17-cv-02872-SHL-cgc

**WAL-MART STORES, INC.,**

        **Defendant.**

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Before the Court is Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") Motion for Summary Judgment (Docket Entry ("D.E.") #34).[1] The instant motion was referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #63). For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED.

**I.   Introduction**

  On December 1, 2017, Plaintiff filed a *pro se* Complaint with this Court. (D.E. #1). On December 13, 2017, Plaintiff filed a *pro se* Amended Complaint, which is the operative pleading

---

[1] Plaintiff also filed a *pro se* "Motion for Summary Judgment" (D.E. #37); however, it is not a proper motion pursuant to Local Rule 7.2. Instead, it contains a handwritten response to Defendant's Statement of Undisputed Material Fact, which is not the same as Plaintiff's Response to Defendant's Statement of Undisputed Material Fact filed by her subsequently obtained counsel (Pl.'s Mot. for Summ. J. at PageID 469-472, 483, 486-89, 496-497, 500-503), as well as various other exhibits. "It is well settled that the district court need not consider *pro se* motions filed [by litigants who are] represented by counsel." *United States v. Feliciano-Montanez*, No. 1:19CR184, 2019 WL 6609687, *1 (N.D. Ohio Dec. 5, 2019) (citing cases). Thus, these *pro se* filings have not been considered in this Report and Recommendation except for as noted.

1

in this case. (D.E. #8). Plaintiff alleges that she was hired by Wal-Mart on August 1, 2013 as a Customer Service Manager at Store #64 in Brownsville Tennessee. (Pl.'s Am. Compl. ¶ 9(a)). She alleges that, during her employment, she was discriminated against and retaliated against on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. (Pl.'s Am. Compl. ¶¶ 1-2, 8). Plaintiff attached as an exhibit her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was filed March 4, 2016. (Am. Compl., Exh. 1, filed at D.E. #8-1). The Charge of Discrimination includes substantially the same claims of discrimination and retaliation on the basis of race and sex. (*Id*.) Plaintiff also attached her EEOC Dismissal and Notice of Rights, which was mailed to her on August 31, 2017, (Am. Compl, Exh. 2, filed at D.E. #8-2), as well as an additional collective exhibit in support thereof, (*Id*. Collective Exh. 3, filed at D.E. #3).

On February 25, 2019, Wal-Mart filed the instant Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Wal-Mart argues that there is no genuine dispute of material fact on the questions of whether she was treated less favorably than any similarly situated co-worker and whether her termination was causally connected to any protected activity. Instead, Wal-Mart asserts that Plaintiff was terminated in accordance with its Coaching for Improvement Policy ("CIP"), which provides a legitimate, non-discriminatory, and non-pretextual basis for its decision.

On June 7, 2019, Plaintiff was appointed counsel. (D.E. #43, 44). On June 23, 2020, Plaintiff, with the assistance of counsel, filed a Response to Defendant's Motion for Summary Judgment. (D.E. #70). Plaintiff's Response includes her Response to Defendant's Statement of Undisputed Material Facts (D.E. #70-1) and various exhibits. Plaintiff's Response argues that there is a genuine issue of material fact as to whether her performance coachings and ultimate

termination were based upon "racial and gender animus" and whether Wal-Mart's stated reasons to the contrary are pretextual.

On July 7, 2020, Wal-Mart filed its Reply in Support of its Motion for Summary Judgment. (D.E. #71). It reiterates that Plaintiff has failed to raise a genuine dispute of material fact exists on her discrimination or retaliation claims.

## II. Proposed Findings of Fact

On August 1, 2013, Wal-Mart hired Plaintiff as a Customer Service Manager at Store #64 in Brownsville, Tennessee. At the time of Plaintiff's hire, the Store Manager was Ken Knotts ("Knotts"). He was the Store Manager for most of Plaintiff's tenure as an employee; he transferred to another store in September 2015.

Plaintiff attended New Associate Orientation on August 2, 2013. During orientation, Wal-Mart provided Plaintiff training, information, and documentation about a number of its policies, including Wal-Mart's Discrimination and Harassment Prevention Policy ("Discrimination Policy") and the CIP, which set forth the procedures for coaching and disciplinary actions. Wal-Mart contends that it discussed these policies with her and that she signed the NAO Participant Checklist on the same day (Plaintiff's Deposition ("Pl.'s Dep.") at 78:3-12, 83:23-84:6, filed at D.E. # 34-4; Declaration of Ken Knotts ("Knotts Decl.") ¶¶ 4-6, filed at D.E. # 34-3); however, Plaintiff disputes whether they were discussed with her. (Pl.'s Dep. at 81:5-24).[2]

The Discrimination Policy does not tolerate any form of discrimination, harassment, or retaliation in any aspect of its business. It also specifically instructed Plaintiff that she was required to notify either a salaried member of management or the Global Ethics Office of any concerns

---

[2] Plaintiff's deposition states that Wal-Mart "went over . . . [s]ome of the information" but that she was told that she would not have access to some policies. (Plaintiff's Deposition ("Pl.'s Dep.") at 81:5-24, filed at D.E. # 70-3).

about potential violations of the policy.  The CIP establishes a system of progressive discipline that begins with a First Written Coaching and then proceeds to a Second Written Coaching and Third Written Coaching.  Further, each time an associate receives a written coaching within twelve months of a prior written coaching, the level of discipline increases.  An associate can clear her disciplinary history under the CIP if she does not receive a new written coaching within twelve months of a prior written coaching.  If an associate goes for twelve months without receiving a new written coaching, regardless of what level she had reached, the associate would start over with a clean slate.  However, if an employee engages in conduct or demonstrates performance that would otherwise warrant another coaching within twelve months of the issuance of the Third Written Coaching, the individual's employment is terminated.

Plaintiff was transferred to the position of Dairy Department Manager in 2014.  Wal-Mart provided Plaintiff a copy of the Dairy Department Manager's written job description, which she signed on February 10, 2014.  As the Dairy Department Manager, Plaintiff was the one associate who was ultimately responsible for the following: maintaining the presentation of the merchandise by stocking and rotating merchandise; removing damaged, expired, and out-of-date goods; setting up, cleaning and organizing product displays; and, signing and pricing merchandise appropriately.

Plaintiff's job duties also included stocking new dairy freight when it arrived.  The task of processing and stocking new dairy merchandise is an essential duty of the Dairy Department Manager and is listed in the written job description under "Essential Functions."  (Pl's Dep. at 97:3-19 & Exh. 9 at PageID 436).[3]  If the overnight team was short-handed or overburdened, the

---

[3] The job description for Dairy/Frozen Department Manager states in pertinent part as follows:

> *An individual must be able to successfully perform the essential functions of this position . . . .*

4

overnight stocker could not always assist with dairy tasks such as processing all of the dairy freight. The overnight team would pull out-of-date dairy merchandise from the shelves and place it in the back cooler when it had time. The out-of-date merchandise was then to be marked down. This process consisted of scanning the bar code on each item, at which time the Wal-Mart inventory system would choose an appropriate price. If the item was not yet expired, the price of the item might be reduced by half; if the dairy product had already expired, the item should be marked down to $0.00 and thrown away. It is disputed who had responsibility to perform the mark-downs. Wal-Mart asserts that it was Plaintiff's responsibility. (Pl.'s Dep. at 107:16-108:17). Plaintiff argues that she was only one of multiple Dairy Department Managers who had this responsibility. (Pl.'s Dep. at 100:1-12 & 107:16-108:18).

In December 2015, Ryan Robertson ("Robertson") became the Store Manager for Store #64. One of Robertson's first priorities was getting the front and back areas of Store #64 cleaned up so that new freight could be efficiently moved to the sales floor. Jonathan Glover ("Glover") served as an Assistant Manager for Store #64 and was Plaintiff's direct supervisor at the time of her termination.

---

> Maintains merchandise presentation in the Dairy/Frozen area by stocking and rotating merchandise, removing damaged or out-of-date goods, selling up [sic], cleaning, and organizing product displays, signing and pricing merchandise appropriately, and securing fragile and high-shrink merchandise.
>
> . . .
>
> Maintaining perishable products . . . and stock[ing] perishable products according to Company policies and procedures.

The job description further tasks the Dairy/Frozen Department Manager with "maintaining a safe shopping environment." (Pl.'s Dep. at Exh. 9, filed at D.E. #34-4, PageID 436-37). Plaintiff acknowledged the Job Description on February 10, 2014. (*Id*. at 97:3-19 & Exh. 9 PageID 438).

5

In December 2015, upon his arrival to work one morning, Robertson observed that there was a lot of dairy freight in the back refrigerator that had not been processed and moved to the sales floor. He also checked the dairy merchandise on the sales floor. During this review, Robertson found out-of-date products on the shelf that were available for sale. Robertson discussed his concerns about the unprocessed freight and out-of-date merchandise with Plaintiff when she arrived for her shift. Robertson directed Plaintiff to remove all out-of-date dairy products before she left for work that day and to work on getting the dairy freight processed and moved to the sales floor. Robertson assigned the store's Personnel Coordinator, who had previously worked as Dairy Department Manager, to help make progress with these tasks and process new freight. During Plaintiff's shift, she began marking down items that were in the back cooler that had started to smell.

After Plaintiff had left for the day, Robertson and Glover checked on Plaintiff's work. They discovered a large quantity of out-of-date dairy products still available on the sales floor and a large quantity of additional dairy products in the back cooler that needed to be marked down and disposed. Some of the out-of-date merchandise was over a year old, dating back to August 2014. Robertson specifically recalls bags of shredded cheese and blocks of cheese covered in mold. Robertson concluded that the only explanation for such a large quantity of out-of-date dairy merchandise was Plaintiff's poor performance, especially because he had directed her to ensure that all out-of-date dairy products were pulled before she left for work that day. (Declaration of Ryan Robertson ("Robertson Decl.") ¶ 6, filed at D.E. #34-5; Declaration of Jonathan Glover ("Glover Decl.") ¶ 10, filed at D.E. #34-6). However, Plaintiff disputes Robertson's reasoning,

pointing to her prior performance appraisals. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Exh. E, filed at D.E. #70-3).[4]

Ultimately, based on Robertson's discovery, he directed Glover to prepare a written coaching for Plaintiff that would address her failure to manage the out-of-date products in her department. When Glover accessed the coaching system to do so, he discovered that Plaintiff had received prior written coachings, including a Third Written Coaching on January 12, 2015. Neither Robertson nor Glover were familiar with Plaintiff's coaching history prior to this time, including when they directed her to address the large quantity of out-of-date dairy products.

With respect to Plaintiff's coaching history, Wal-Mart's coaching records demonstrate that Plaintiff received her First Written Coaching on June 19, 2014 for taking too short of a lunch break, thereby incurring overtime by the end of the week. (Knotts Decl. ¶ 8 & Exh. 2, filed at D.E. #34-3, PageID 412-413). Plaintiff acknowledged her First Written Coaching on the date it was issued. (*Id*.) Plaintiff's First Written Coaching warned that, if her behavior continued, she would receive a "Second Written up to and including termination." (*Id*.) Plaintiff disputes that she acknowledged the First Written Coaching and states that she believed that the First Written Coaching was actually a verbal warning. (Pl.'s Dep. at 117:2-118:24, 123:7-23, 125:5-24).[5] Plaintiff also argues that she

---

[4] Plaintiff has provided six undated performance appraisals that mark her performance as "Exceeds Expectations." (Pl.'s Response to Def.'s Mot. for Summ. J. at Exh. E, PageID 724-730).

[5] Plaintiff's Response to Defendant's Statement of Undisputed Material Fact states that "[h]er first coaching was given by Assistant Manager and perpetrator of racial discrimination and animus, Mark Thomas, and . . . was because Plaintiff went to upper management to report Mark Thomas for his discriminatory practices." (Pl.'s Resp. to Def.'s Statement of Undisputed Material Fact at PageID 657, ¶ 45, filed at D.E. #70-1 (citing Pl.'s Dep. at 145-146)). However, these cited portions of Plaintiff's deposition do not reference any racial discrimination or retaliation by Thomas or anyone else; instead, Plaintiff testified in her deposition that the only reason that the First Written Coaching was issued was due to a "grudge" related to Plaintiff not assisting in the frozen department. (*Id*.)

7

was not the only manager taking a half-hour lunch break and that her half-hour lunch breaks had been approved by a manager. (Pl.'s Dep. at 117:1-118:24).[6]

Plaintiff received her Second Written Coaching on August 6, 2014 for poor job performance, which she acknowledged on that date. (Knotts Decl. ¶ 9 & Exh. 3). The Second Written Coaching states that Plaintiff had been directed to perform a number of tasks by August 1 and that she did not do so. (*Id.* at Exh. 3). Plaintiff's Second Written Coaching states that she was "expected to take control of the dairy department thru [sic] organizing her time and that of the associates under her charge" and "to learn her role as a department manager and be accountable for her actions." (*Id.*) It also warned that, if her behavior continued, she could receive a "Third Written up to and including Termination." (*Id.*) Plaintiff does not dispute that she received a Second Written Coaching but disputes the validity of the coaching because "Ilene" and "Robin" said that they spoke with Knotts "to get him to override the coaching." (Pl.'s Dep. at 160:1-24).

On January 12, 2015, Wal-Mart issued Plaintiff a Third Written Coaching for insubordination, which she acknowledged on that date. (Knotts Decl. ¶ 10 & Exh. 4). Wal-Mart states that Plaintiff had been directed to report to the Frozen Department to assist other associates. (*Id.*). Instead, Plaintiff stayed in the Dairy Department and did not go to assist in the Frozen

---

[6] Plaintiff also cites to a "Staffing Plan" contained in Defendant's Production of Documents in support of this dispute. Plaintiff's counsel has neither provided a cite to this document nor included a document titled "Staffing Plan" as an exhibit. Upon reviewing the record, the Court located a document entitled "Store 64—Fresh Staffing Plan—01/14/2015" in Plaintiff's *pro se* filings. (*See* D.E. #37-1). It has been recommended that these filings not be considered because they were not filed with a proper motion and because Plaintiff subsequently obtained counsel who filed a Response to Defendant's Motion for Summary Judgment on her behalf. *See*, *supra*, n.1. Even if the District Court were inclined to consider this filing, the document only appears to show that certain associate employees were assigned to thirty-minute lunch shifts. (*See* D.E. #37-1). It does not provide any information regarding the length of Plaintiff's lunch shift or whether her thirty-minute lunch shifts had been approved. (*Id.*)

Department as directed. (*Id*.)[7] Plaintiff's Third Written Coaching states as follows: "I expect [Plaintiff] to follow direction given with a sense of urgency, and through [sic] completion. If work cannot be complwted [sic] on time, as directed, then she needs to notify a supervisor to advise on this issue." (*Id*. at Exh. 4). Plaintiff's Third Written Coaching also warned her that, if her behavior continued, it would result in "Termination." (*Id*.) Plaintiff disputes that she failed to follow instructions as she claims that Knotts told her that she did not have to go to the Frozen Department. Plaintiff also disputes that this constituted her Third Written Coaching because Polk advised that the prior coachings were supposed to be removed from her record. (Pl.'s Dep. at 170, Page ID 715, filed at D.E. #70-3).

Once Glover became aware of Plaintiff's coaching history, he informed Robertson. Robertson then directed Glover to proceed with termination of Plaintiff's employment per the CIP. Robertson had worked at Store #64 for less than one month at the time he decided to terminate Plaintiff's employment. On December 30, 2015, Glover met with Plaintiff in the presence of a witness to terminate her employment. Plaintiff was terminated on this date for "Lack of adequate job performance. Very high quantity of out of date products, putting customer's health in danger." (Glover Decl. ¶ 16). Plaintiff called Wal-Mart's hotline number after she was terminated.

Robertson and Glover had no knowledge of any complaints made by Plaintiff alleging that Wal-Mart had engaged in any discrimination, harassment, or retaliation at any time prior to Robertson making the decision to end her employment based on the CIP. Robertson has always

---

[7] Plaintiff states that she disputes that Wal-Mart's position and asserts that she was required to first complete her duties in the Dairy Department before assisting in another department. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts at PageID 659, ¶ 53, filed at D.E. #70-1). However, the portions of her deposition that she cites do not support her dispute. (*See* Pl.'s Dep. at 97, PageID 703, filed at D.E. #70-3).

consistently applied the CIP, terminating any associate whose conduct or performance would otherwise warrant a written coaching within twelve months of a Third Written Coaching.

### III. Proposed Analysis

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### A. *Title VII Discrimination*

Under Title VII, discrimination of the basis of race, color, religion, sex, or national origin constitutes an unlawful employment practice. 42 U.S.C. § 2000e-2(a). A plaintiff may establish a claim of disparate treatment on these bases either by introducing direct evidence of discrimination or by proving circumstantial evidence which would support an inference of discrimination. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct-evidence approach, a plaintiff must present evidence that, "if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 2000). To successfully pursue a direct-discrimination claim, the evidence must establish, *without any inferences or presumptions*, that discriminatory motives caused the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 59, 563 (6th Cir. 2000); *see also Brack v. Shoney's, Inc.,* 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003). If the plaintiff introduces evidence

11

of an adverse employment action on the basis of his protected status, the burden of persuasion shifts to the employer to prove that it would have taken the adverse employment action even had it not been motivated by discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989)).

Under the circumstantial evidence approach, the tripartite test established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and later clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to determine if the conduct violated Title VII. First, a plaintiff must establish a *prima facie* case of discrimination, which requires as follows: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

If plaintiff establishes the *prima facie* case, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this burden, then a plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. *Id.* The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, and that the stated reasons were insufficient to explain the defendant's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

Here, there is no evidence of direct discrimination. Thus, Plaintiff's case must be analyzed under the *McDonnell-Douglas* framework set forth above. With respect to the *prima facie* case,

12

Plaintiff has not identified any employee of a different race or sex that was treated less favorably.[8] She did not specifically address the similarly situated prong whatsoever in her Response to Defendant's Motion for Summary Judgment, which raised it as grounds for its motion to be granted. She further did not dispute that Robertson consistently applied the CIP without exception, which required termination when an employee engaged in an incident that would otherwise result in a coaching within twelve months of receiving a third written coaching. (*See* Robertson Decl. ¶ 11). The failure to identify a similarly situated employee that was treated less favorably is fatal to her case. Accordingly, it is RECOMMENDED that Plaintiff's Title VII claims of discrimination on the basis of sex and race fail as a matter of law.

### B. *Title VII Retaliation*

Title VII prohibits retaliation against an employee because that employee has engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e-3(a). As with a Title VII discrimination claim, a Title VII retaliation claim can be established either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support such an inference. Here, there is no direct evidence that Plaintiff suffered retaliation for any protected activity. Thus, Plaintiff's claim must be analyzed under the *McDonnell Douglas* framework set forth above.

Under *McDonnell Douglas*, Plaintiff bears the initial burden to establish a *prima facie* case of retaliation, which requires that she demonstrate as follows: (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by the defendant; (3) thereafter,

---

[8] Plaintiff mentions that other employees were permitted to take thirty-minute lunch breaks "without any repercussions" while she received a written coaching (*See* Pl.'s Dep. at 117:1-118:24 & *supra*, n.6); however, Plaintiff does not provide their race, sex, or any other information demonstrating that they are similarly situated to her. Plaintiff also states that she was not treated well by an individual named Mark Thomas, *see*, *infra*, n.9; however, she does not cite to any evidence that any similarly situated individuals were treated differently.

the defendant took an action that was materially adverse to plaintiff; and, (4) a causal connection existed between the protected activity and the materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citations omitted). If Plaintiff succeeds in making out the elements of a *prima facie* case, the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions. *Id*. If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was not the true reason for the employment decision. *Id*. (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

Here, Plaintiff's Response to Defendant's Statement of Undisputed Fact does not cite any evidence that she either engaged in activity protected by Title VII in advance of her termination or that any exercise of her protected activity was known by Wal-Mart. On the contrary, it is undisputed that neither Robertson nor Glover were aware of any alleged protected activity. (*See* Robertson Decl. ¶ 12; Glover Decl. ¶ 19).[9] Accordingly, it is RECOMMENDED that Plaintiff's Title VII retaliation claims fail as a matter of law.

---

[9] Plaintiff's Response to Defendant's Motion for Summary Judgment also cites to exhibits that she did not cite in her Response to Defendant's Statement of Undisputed Fact regarding complaints she made about the conditions of her employment. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at PageID 671-73, filed at D.E. #70-2, and Exhs. D, F, J, K). They were cited in support of Plaintiff's position that the reason given for her termination was pretextual, not in support of her claim of retaliation. However, out of an abundance of caution, they are addressed here.

First, citing evidence in the Response to the Motion for Summary Judgment that was not raised in the Response to Defendant's Statement of Undisputed Fact (or provided in an additional statement of material fact, which was not filed here) is not contemplated under Local Rule 56.1. Even if the District Court were inclined to consider these documents, and even if they were deemed as creating a genuine issue of material fact as to whether she had engaged in protected activity, they undoubtedly do not contain any evidence that either Robertson or Glover was aware of any protected activity, a fact that Plaintiff did not dispute in her Response to Defendant's Statement of Undisputed Fact (*See* Pl.'s Resp. to Def.'s Statement on Undisputed Material Fact ¶ 58, filed at D.E. #70-1, PageID 660-61). Thus, it is RECOMMENDED that Plaintiff's Title VII retaliation claim would still fail as a matter of law.

14

## IV. Conclusion

For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED.

**DATED** this 28th day of September, 2020.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

Additionally, Defendant argues that Plaintiff is attempting to raise a hostile-work-environment claim by referencing these documents. Again, Plaintiff only references these never-before-cited documents regarding the question of whether the reason given for her discrimination was pretextual. Thus, it is RECOMMENDED that Plaintiff's Response should not be construed as attempting to raise such a claim.