## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| ANGELA CHERRY TAYLOR, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-02872-SHL-cgc |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| Defendant. | ) | |

## ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Magistrate Judge Charmiane Claxton's Report and Recommendation ("R&R"), dated September 28, 2020.  (ECF No. 72.)  In this matter, Plaintiff Angela Cherry Taylor alleges that Wal-Mart unlawfully terminated her employment based on her race and sex, and retaliated against her because she engaged in protected activity.  (ECF No. 8.)  Wal-Mart argues in its Motion for Summary Judgment that there are no disputes of material fact and that Ms. Taylor's evidence is insufficient to create a prima facie case of discrimination or retaliation as a matter of law.  (ECF No. 34.)

In the R&R, Magistrate Judge Claxton recommends granting Defendant's Motion for Summary Judgment.  She concludes that Plaintiff failed to offer sufficient evidence of a similarly situated employee who was treated more favorably than her, thus failing to meet her burden as to a prima facie case of discrimination.  In addition, Magistrate Judge Claxton concludes that Plaintiff does not provide sufficient evidence that she engaged in a protected activity prior to her termination or that Wal-Mart knew of any protected activity, if she did so engage, thus defeating the retaliation claim.

Ms. Taylor timely filed Objections to the Report on October 12, 2020, arguing that the Magistrate Judge overlooked submitted material that created genuine issues of material fact as to similarly situated individuals who were treated differently (thus supporting a prima facie case of discrimination) and as to her engagement in protected activity that Wal-Mart officials were aware of (thus supporting the retaliation claim).  (ECF No. 73 at PageID 817–20.)  Wal-Mart responded to these objections on October 26, 2020, arguing that there is no evidence supporting either objection.  (ECF No. 74.)  Because the Court finds that the evidence Plaintiff points to is insufficient to create a factual dispute for a jury to consider, the recommendations of the R&R are **ADOPTED**, and Defendant's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

The following facts are a condensed version of those found by the Magistrate Judge in the R&R, the vast majority of which are not contested by Plaintiff.  The Court notes where there is dispute.

Ms. Taylor worked for Wal-Mart from August 2013 to December 2015. (ECF No. 70-1 at PageID 648, 661.)  She started as a Customer Service Manager, but, in 2014, became the Dairy Department Manager.  (Id. at PageID 648, 651.)  As Dairy Department Manager, Ms. Taylor was responsible for maintaining the presentation of the dairy merchandise; removing damaged or expired goods; organizing product displays; and signing and pricing merchandise.  (Id. at PageID 651.)  She was also responsible for removing out-of-date goods from the shelves to prevent health issues for customers.  (Id. at PageID 651.)

In December 2015, Ms. Taylor's supervisor Ryan Robertson, who had just become the Store Manager that month, observed that there was a lot of dairy freight in the back refrigerator that had not been processed and moved to the sales floor.  (Id. at PageID 653–54.)  Mr.

Robertson also found out-of-date products on the shelves, available for sale.  (Id. at PageID 653–54.)

Mr. Robertson discussed these concerns with Ms. Taylor when she arrived at work and instructed her to address these issues during her shift.  (Id. at PageID 654.)  After Ms. Taylor left for the day, Mr. Robertson assessed the shelves and merchandise, and found "a large quantity of additional dairy products in the back cooler that needed to be marked down or disposed of."  (Id. at PageID 655.)  Ms. Taylor "does not dispute that dairy product was present in the back cooler, but she lacks sufficient knowledge to form a belief as to the age of the product."  (Id. at PageID 655.)

Following this event, Mr. Robertson asked the assistant manager, Mr. Glover, to prepare a "Written Coaching," outlining how Ms. Taylor failed to meet her job obligations that day.  (Id. at PageID 656.)  When Mr. Glover accessed the Wal-Mart system to complete this task, he discovered that Ms. Taylor had already received her third "Written Coaching" in January of 2015 and was thus subject to termination, pursuant to the "Coaching for Improvement" Policy (CIP).  (Id. at PageID 656.)  Magistrate Judge Claxton summarized that policy in the R&R:

> The CIP establishes a system of progressive discipline that begins with a First Written Coaching and then proceeds with a Second Written Coaching and a Third Written Coaching.  Further, each time an associate receives a written coaching within twelve months of a prior written coaching, the level of discipline increases.  An associate can clear her disciplinary history under CIP if she does not receive a new written coaching within twelve months of a prior written coaching.  If an associate goes for twelve months without a new written coaching, regardless of whatever level she had reached, the associate would start over with a clean slate.  However, if an employee engages in conduct or demonstrates performance that would otherwise warrant another coaching within twelve months of the issuance of the Third Written Coaching, the individual's employment is terminated.

(ECF No. 72 at PageID 805) (citations omitted.)

As the R&R states, the evidence submitted established that Ms. Taylor had a history of prior coachings:

> With respect to Plaintiff's Coaching history, Wal-Mart coaching records demonstrate that Plaintiff received her First Written Coaching on June 19, 2014 for taking too short of a lunch break, thereby incurring overtime by the end of the week.
>
> Plaintiff received her Second Written Coaching on August 6, 2014 for poor job performance . . . Plaintiff had been directed to perform a number of tasks before August 1 and that she did not do so.  Plaintiff's Second Written Coaching . . . warned that, if her behavior continued, she could receive a "Third Written up to and including termination." . . .
>
> On January 12, 2015, Wal-Mart issued Plaintiff a Third Written Coaching for insubordination . . . WalMart states that Plaintiff had been directed to go to the Frozen Department . . . Instead, Plaintiff stayed in the Dairy Department . . . Plaintiff's Third Written Coaching also warned that, if her behavior continued, it would result in "Termination."

(Id. at PageID 808–10.)

Based on the previous coachings and the applicable policy, Robertson instructed Glover to proceed with Ms. Taylor's termination.  (ECF No. 70-1 at PageID 656.)  She was terminated on December 30, 2015, with the following reason for termination: "Lack of adequate job performance.  Very high quantity of out of date products, putting customer's health in danger."  (Id. at PageID 661.)

The heart of this lawsuit is Plaintiff's contention that her previous coachings were discriminatory and retaliatory, and that other similarly situated individuals were treated more favorably than her, based on their race and sex.  Specifically, she alleges that Melissa (LNU) and Laura (LNU), white, female coworkers, were situated similarly and treated more favorably, despite having similar work problems.  (ECF No. 73 at PageID 818–19.)  She also alleges that men were treated more favorably.  (Id. at 819.)  In support of these allegations, she points to the affidavit of Jarmain Barken, a former coworker, and her own deposition testimony.  (ECF Nos.

70-3, PageID 720 and 700, respectively.)  In her Objection, she also relies on the allegations in the Amended Complaint.  (ECF No. 73, PageID 818-820.)

As to her retaliation claim, she argues that her previous coachings were the product of retaliation for reporting discriminatory conduct to upper management at Wal-Mart.  (ECF No. 73 at PageID 820–24.)  She alleges that a previous supervisor, Mark Thomas, issued her first Written Coaching as a response to her formal and informal complaints about Mr. Thomas's discriminatory conduct.  (Id. at 820–21.)  She again points to her own testimony and the affidavit of Jarmain Barken, as well as an exhibit attached to Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment as support.  (Id. at PageID 820–21.)  The exhibit contains an email conversation among upper management personnel at Wal-Mart regarding her coachings.  (ECF No. 70-3 at PageID 757–65.)

## STANDARD OF REVIEW

District courts may designate magistrate judges to submit findings of fact and recommendations on various pretrial motions.  28 U.S.C. § 636(b)(1)(B).  When a party timely objects to the magistrate judge's recommendation on a dispositive issue, the court must make a de novo determination before ruling on the motion.  28 U.S.C. § 636(b)(1)(C).  The court is then free to accept, reject or modify the magistrate judge's recommendation.  Id.  The Court need not review, under de novo or any other standard, those aspects of the recommendation to which no specific objection is made.  Thomas v. Arn, 474 U.S. 140, 150 (1985).  If there is no specific objection, the court need only review the recommendation for clear error.  Id. at 151.

The motion before the Court is one for summary judgment.  Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Although hearsay evidence may

not be considered on a motion for summary judgment, Carter v. Univ. of Toledo, 349 F.3d 269, 274 (6th Cir. 2003), evidence need not be in a form that would be admissible at trial. Celotex Corp. v. Cartrett, 477 U.S. 317, 324 (1986); see also Fed. R. Civ. P. 56(c)(2). The court is to "view facts in the record and reasonable inferences that can be drawn from those facts in light most favorable to the nonmoving party." Bible Believers v. Wayne Cty., 765 F.3d 578, 586 (6th Cir. 2014) (citing Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

A genuine dispute of material fact exists if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court's role is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014) (citing Anderson, 477 U.S. at 251–52). A court should not make credibility determinations when determining whether a genuine issue of fact remains for trial. See Ahlers v. Schebil, 188 F.3d 365, 369 (6th Cir. 1999) (citing Anderson 477 U.S. at 255).

Federal Rule of Civil Procedure 56 provides that affidavits or declarations supporting a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify about the matters stated therein." Fed. R. Civ. P. 56(c)(4); see also Moore v. Holbrook, 2 F.3d 697, 699 (6th Cir. 1993).

## ANALYSIS

Magistrate Judge Claxton recommends granting summary judgment to Defendant on the discrimination claim, finding that Plaintiff failed to establish a prima facie case of discrimination because she did not identify a similarly situated employee of a different race or sex who was

treated more favorably than Plaintiff.  (ECF No. 72 at PageID 814.)  In addition, Magistrate

Judge Claxton recommends granting summary judgment on the retaliation claim, concluding that

there is no evidence that Plaintiff engaged in protected activity prior to the termination or that

Wal-Mart was aware of any such activity.  Plaintiff objects to both conclusions, arguing that

there are disputes of material fact, citing to the Amended Complaint, her own deposition

testimony, the affidavit of Jarmain Barken, and other exhibits to her Response to the Motion for

Summary Judgment.  However, because none of these documents cure the deficiencies

highlighted by the Magistrate Judge, summary judgment is appropriate here.  The Court

addresses each of the claims below.

I.      Discrimination Claim:

Title VII forbids "an employer . . . to discharge any individual . . . because of such

individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  A plaintiff

may challenge an unlawful employment practice by producing either direct or circumstantial

evidence of discrimination.  Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997).  Ms.

Taylor does not dispute Magistrate Judge Claxton's analysis of her claim as one based on

circumstantial evidence.  (ECF No. 73 at PageID 818.)

The circumstantial evidence approach follows a three-step process:  First, the plaintiff

establishes a prima facie case of discrimination.  Second, the defendant is given an opportunity

to rebut the presumption of discrimination with a legitimate, nondiscriminatory reason for the

action taken.  Third, the plaintiff must persuade the trier of fact that the defendant's proffered

rebuttal is pretextual, and that the true rationale behind defendant's action was a discriminatory

motive.  McDonnell Douglas Corporation v. Green, 411 U.S. 792, 800–03 (1973); Texas

Department Community Affairs v. Burdine, 450 U.S. 248, 253–56 (1981).

To establish a prima facie case, the plaintiff must show that:  (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside of the class or was treated differently than similarly situated, non-protected employees.  DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004).  A similarly situated employee is one who is "similarly situated in all material respects."  Johnson v. Ohio Dep't of Public Safety, 942 F.3d 329, 331 (6th Cir. 2019).  Relevant to the analysis is whether the person and plaintiff: (1) engaged in the same conduct, (2) dealt with the same supervisor, or (3) were subject to the same standards.  Id.

Although Plaintiff was a member of a protected class and did suffer an adverse job action, Magistrate Judge Claxton concluded that Ms. Taylor did not produce sufficient evidence of a "similarly situated" individual, thus failing to meet her prima facie burden.  (ECF No. 72 at PageID 813–14.)  Judge Claxton acknowledges that other employees were generally referred to as, for example, being able to take 30-minute lunch breaks without repercussions, but that the information required to establish all relevant aspects of the comparators was not provided.  Id.

Ms. Taylor objects to this finding, pointing to allegations in the Amended Complaint that Laura (LNU) and Melissa (LNU) were "similarly situated" employees.  (ECF No. 73 at PageID 818.)  In the Amended Complaint, Ms. Taylor alleges that Melissa, Laura, and male coworkers were treated more favorably than Plaintiff.  The Amended Complaint also includes affidavits signed by Ms. Taylor's coworkers, Allyson Clark, Antonett Rogers, and Jerry Ward.  (Id. at PageID 69–77.)  In her Objections, Ms. Taylor also cites the Affidavit of Jarmain Barken.  (ECF No. 70-3 at PageID 720–22.)  However, Plaintiff's testimony and the affidavits she offers are not sufficient to establish that similarly situated coworkers were treated more favorably.

If Melissa, Laura, and non-African American, male employees were treated more favorably, as generally alleged in the Amended Complaint, it is incumbent on Plaintiff to show, through documents or testimony, that they engaged in similar actions, stood in similar positions, and were treated more favorably than Plaintiff.  None of that is offered here.

As to Laura, Plaintiff alleges that Laura was provided help in "taking down shelves and cleaning," while Plaintiff was not provided any help.  (ECF No. 8 at PageID 46.)  However, Plaintiff provides no evidence as to how Laura was similarly situated to Plaintiff, nor does she provide any evidence as to how the alleged lack of help with this task led to an adverse employment action against Plaintiff.  See Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 364 (6th Cir. 2010) (favorable treatment of an employee not similarly situated not sufficient to establish a prima facie case).  In essence, Plaintiff does not state the basis for her claim that Laura was a valid comparator.

As to Melissa, Plaintiff alleges that Melissa failed to throw away expired products, like Plaintiff, but was not terminated.  (ECF No. 8 at PageID 47-48.)  However, Plaintiff provides no evidence as to how Melissa was similarly situated to Plaintiff—for example, if Melissa did not have three prior coachings, like Plaintiff, she would not be similarly situated to Plaintiff in "all relevant aspects."  See id.  Given the lack of information about Melissa's prior coachings, among other missing pieces, Plaintiff fails to state the basis for her allegations that Melissa made a similar mistake but was treated more favorably.

As to the white male employees that Plaintiff mentions, Plaintiff alleges that they failed to throw away expired products but were not terminated.  (ECF No. 8 at PageID 48.)  Again, Plaintiff provides no specifics to establish that these male employees were similarly situated, nor

does she provide a foundation—or information like names, work titles, and job responsibilities—for her allegations.

Wal-Mart argues that, despite Ms. Taylor's contentions, she has produced no evidence of the coachings or experiences that Melissa and Laura had with Wal-Mart's management team. (ECF No. 34-1 at PageID 381.) Wal-Mart also points out that Ms. Taylor produced no evidence that her supervisors applied the coaching policy inconsistently. (ECF No. 34-1 at PageID 381.)

Wal-Mart is correct: Plaintiff cannot rely on mere allegations to create a genuine issue of material fact and thus defeat summary judgment. Lindsay v. Yates, 578 F.3d 407, 414–15 (6th Cir. 2009) ("[The] burden-shifting scheme first requires that the plaintiff present evidence from which a reasonable jury could conclude that there exists a prima facie case of housing discrimination."). Plaintiff's conclusory statements that other employees engaged in the same action as her but were not terminated are not sufficient to establish a prima facie case of employment discrimination. See Viet v. Le, 951 F.3d 818, 823 (6th Cir. 2020) ("Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage." (citations omitted)).

Similarly, the affidavits Plaintiff provides do not establish a prima facie case of discrimination because they simply do not mention discrimination. Although Plaintiff argues in her objection that Mr. Barken's Affidavit, (ECF No. 70-3 at PageID 720-722), supports her deposition testimony, there is nothing in that affidavit regarding other similarly situated employees. It does not discuss Melissa, Laura, or other employees as being treated more favorably. (ECF No. 70-3 at PageID 720–22.) Mr. Barken suggests that "a number of employees" were treated in a demeaning manner by manager Mark Thomas, but he does not

10

provide the race or gender of that group or allude to any discrimination.  (Id. at PageID 721.) The affidavits of her other coworkers similarly do not mention discrimination, nor do they mention more favorable treatment of Melissa, Laura, or the unnamed male coworkers.

Plaintiff's allegations are insufficient to create a genuine issue of material fact as to similarly situated individuals treated more favorably on the basis of race or sex.  Because Plaintiff has failed to produce evidence supporting an essential element of her prima facie case of discrimination, the Court adopts Magistrate Judge Claxton's recommendation and **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's Title VII discrimination claim.

II.     Retaliation Claim:

Like a discrimination claim, a Title VII retaliation claim can be proven through direct or circumstantial evidence.  Laster v. City of Kalamazoo, 746 F.3d 714, 730 (6th Cir. 2014) (citations omitted).  And like her discrimination claim, Ms. Taylor does not dispute Magistrate Judge Claxton's use of the circumstantial evidence approach in analyzing her retaliation claim. (ECF No. 73 at PageID 820.)

To establish a claim of retaliation, the plaintiff bears the initial burden of proving a prima facie case, which requires that:  (1) she engaged in activity protected under Title VII; (2) her exercise of such activity was known to the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection exists between the protected activity and the materially adverse action.  Laster, 746 F.3d at 730 (citations omitted). If the plaintiff succeeds in making out a prima facie case, the burden of producing evidence shifts to the defendant to show a legitimate, non-discriminatory reason for its actions.  Id.  If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that the proffered reason is merely pretextual.  Id.

"Protected activity includes complaints to coworkers, reporters, and managers." Yazdian v. ConMed Endoscopic Techs., Inc., 793 F.3d 634, 637 (6th Cir. 2015). The complaints must be related to Title VII protected activity. See id. at 645–46 (providing examples of statements that do not rise to the level of Title VII protected activity complaints.) Generalized grievances about management style or character are not "protected activity," but complaints that specifically challenge management style or character as discriminatory are "protected activity." Id.

Plaintiff's retaliation claim fails because there is insufficient evidence that she engaged in protected Title VII activity and that any decision-maker was aware of her protected activity, if it occurred. In her objections, Plaintiff again highlights her own deposition testimony, the affidavit of Jarmain Barken, and her exhibits of email correspondence. (ECF No. 70-3 at PageID 700–22.) According to Plaintiff, these documents establish her prima facie case of retaliation. However, for the reasons outlined below, they are not sufficient to create a genuine issue of material fact.

First, most of Plaintiff's cited evidence is not evidence of protected activity because it relates to generalized grievances rather than discrimination. Neither Plaintiff's testimony nor Mr. Barken's affidavit mentions discrimination, so they are not evidence of protected activity. Rather, each focuses on general management grievances. Plaintiff testified in her deposition that she believed that Mr. Thomas issued her First "Written Coaching" because Ms. Taylor went to upper management to discuss the tasks Mr. Thomas assigned to her, not a claim rooted in discrimination. (Id. at PageID 711.) Mr. Barken, then an Assistant Store Manager, states in his affidavit that he observed Mr. Thomas treating employees in a "demeaning and derogatory way" and that upper management at Wal-Mart was "extremely deferential" to Mr. Thomas. (Id. at PageID 721.) Again, the affidavit is missing any reference to complaints about Mr. Thomas

involving discrimination.  Rather, it appears that Mr. Barken believed that Mr. Thomas did not treat any of his employees properly, and that upper management did not stop him.  While the Court does not condone Mr. Thomas's alleged management practices, nor upper management's alleged reaction to it, the proof of his discriminatory conduct is missing.

Similarly, most of the emails submitted by Plaintiff do not support her argument that she engaged in protected activity.  (See id. at PageID 757–63.)  The documents do reflect a series of communications about Ms. Taylor's position on the earlier coachings, whether those coachings were supported by the facts and whether they should have remained in her file.  But most of the emails do not mention discrimination based on any protected characteristic, only general grievances about Mr. Thomas's management.  See Yazdian v. ConMed Endoscopic Techs., Inc., 793 F.3d 634, 645 (6th Cir. 2015) (complaint must mention illegal discrimination, not just generally unfair management practices).

As for the attachments that could indicate that Plaintiff participated in protected activity, they do not demonstrate that any decision-maker was aware of such activity, an essential element of a retaliation claim.  See Laster v. City of Kalamazoo, 746 F.3d 714, 730 (6th Cir. 2014). Specifically, there are two attachments to Plaintiff's response—an email, Exhibit H, and a complaint, Exhibit K—that mention alleged discriminatory treatment by Mr. Thomas.  However, these attachments, dated August 2015 and December 2015, both came after all of Plaintiff's coachings involving Mr. Thomas, who Plaintiff contends engaged in illegal retaliation.  It would be impossible for Mr. Thomas to have issued any of Plaintiff's coachings in retaliation for these reports, given that they had not yet been filed at the time.  Even putting aside questions regarding the reliability and admissibility of these emails, because they are dated after all three previous coachings involving Mr. Thomas, they cannot be evidence of his retaliation.

Finally, it is undisputed that the decision-makers on termination, Mr. Robertson and Mr. Glover, were not aware of any protected activity.  (ECF. No. 72 at PageID 815; ECF No. 73 at PageID 822 (Plaintiff's objection asserts that there was only a dispute of fact about whether Mark Thomas knew about her protected activity.).)  To the extent the retaliation claim is directed at Mr. Robertson or Mr. Glover, there is no evidence to support their knowledge of any complaints.

## CONCLUSION

Plaintiff has failed to offer evidence of a dispute of fact for a jury to consider as to essential elements of her claims for Title VII discrimination and retaliation.  This Court **ADOPTS** the recommendations of Magistrate Judge Claxton and **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED,** this 28th of January, 2021.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE

14